# In the United States Court of Federal Claims

No. 25-71
Filed: February 4, 2025
Reissued: February 13, 2025†

---

**ORION GOVERNMENT SERVICES, LLC,**

    *Plaintiff*,

v.

**THE UNITED STATES,**

    *Defendant*,

and

**MCCARTHY BUILDING COMPANIES, INC.,**

    *Intervenor-Defendant*.

---

## ORDER

**TAPP, Judge.**

    This bid protest considers whether the United States Army Corps of Engineers ("USACE") erred when it awarded McCarthy Building Companies, Inc. ("McCarthy") a firm-fixed-price contract for construction services in the Port of Houston. (Compl. at 1, ECF No. 1). Along with its Complaint, Orion Government Services, LLC ("Orion") moved for a preliminary injunction. (Pl.'s Mot., ECF No. 5). The Court determines that Orion has not demonstrated a likelihood of success on the merits or irreparable harm, thus, the Motion is **DENIED**.

### I. Background

    This Solicitation concerns construction services at the Port of Houston. (*See* Compl. at 1; Def.'s Resp. at 1, ECF No. 23). The services sought included: dredging a navigation channel,

---

† This Order was originally issued under seal on February 4, 2025, (ECF No. 26). The Court provided parties the opportunity to review this Order for any proprietary, confidential, or other protected information and submit proposed redactions. The proposed redactions were filed on February 12, 2025, (ECF No. 31), and are accepted by the Court. The sealed and public versions of this Order differ only to the extent of those redactions, the publication date, and this footnote.

building a retaining wall, and installing a bulkhead wall. (Compl. at 1). The Request for Proposals ("RFP") stated that the contract would be awarded as a single firm-fixed-price contract with a maximum construction period of 1,091 calendar days. (*Id.* at 4). The RFP also stated that the award would be made using a best-value tradeoff approach between five factors: (1) Construction Execution Approach; (2) Organization/Management Team; (3) Past Performance; (4) Small Business Participation; and (5) Price. (*See* Compl. at 4; Def.'s Resp. at 3). USACE received proposals from four different offerors: Orion, McCarthy, ███████████, and ███████████ (Compl. at 8; Def.'s Resp. at 3).

Final evaluations for all four offerors are represented in the chart below:

| | Offeror | Factor 1 - Construction Execution Approach | Factor 2 - Organization/Management Team | Factor 3 - Past Performance | Factor 4 - Small Business Participation | Factor 5 - Revised Price |
|---|---|---|---|---|---|---|
| | | | Table 6 - Final Revised Proposals Post Discussions | | | |
| 1 | McCarthy Building Companies Inc | OUTSTANDING | OUTSTANDING | SUBSTANTIAL CONFIDENCE | GOOD | Fair and Reasonable $181,551,864.00 |
| 2 | Orion Government Services LLC | GOOD | OUTSTANDING | SATISFACTORY CONFIDENCE | ACCEPTABLE | Fair and Reasonable $149,996,515.00 |
| 3 | ███ | ███ | ███ | ███ | ███ | ███ |
| 4 | ███ | ███ | ███ | ███ | ███ | ███ |

(Def.'s Resp. App. at 3, ECF No. 23-1). McCarthy received a better rating than Orion under factors 1, 3, and 4, but both offerors were rated equally for factor 2. (*Id.*). For factor 5 (Price), both McCarthy's and Orion's proposals were rated as "Fair and Reasonable." (*Id.*). USACE awarded the contract to McCarthy, and Orion subsequently filed a protest with the Government Accountability Office ("GAO"). (*Id.* at 4). The GAO ultimately dismissed Orion's protest after determining that Orion was not an interested party to question the evaluation or award decision due to the departure of one of Orion's designated key personnel. (Compl. at 15). Orion now brings this Complaint claiming that USACE: (1) conducted an unreasonable and unlawful price reasonableness evaluation; (2) failed to properly evaluate unbalanced pricing; and (3) failed to properly evaluate McCarthy's proposal.

## II. Analysis

The Court has the authority to issue a preliminary injunction under RCFC 65 and the Tucker Act. 28 U.S.C. § 1491(b)(2). Preliminary injunctions may be granted when a party shows that "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *BlephEx, LLC v. Myco Industries, Inc.*, 24 F.4th 1391, 1398 (Fed. Cir. 2022) (internal citations omitted). These factors must be established "by a clear showing." *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 226 (2011). No single factor is dispositive, but the first two are the most important and must be established. *Altana Pharma AG v. Teva Pharms.*

*USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (internal citation omitted); *see also SoClean, Inc. v. Sunset Healthcare Solutions, Inc.*, 52. F.4th 1363, 1368 (2022) (internal citation omitted). While a strong showing of one factor may overcome weakness as to others, "the absence of an adequate showing," regarding "any one factor may be sufficient" to demand denial of injunctive relief. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

### A. Likelihood of Success on the Merits

To succeed on the merits, Orion must demonstrate that the USACE's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also* 28 U.S.C. § 1491(b)(4). This standard is achieved by proving that the procurement official's decision (1) lacked a rational basis, or (2) the procurement procedure involved a violation of regulation or procedure. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (2015). Orion fails to prove either.

Orion argues the Agency "conducted no assessment of price reasonableness prior to awarding the contract to McCarthy." (Pl.'s Mot. at 19). Orion claims that the USACE determined McCarthy's price to be "reasonable" because it was "within 25% of the [Independent Government Estimate ("IGE")]," and argues that this sort of determination "does not equate to a finding of price reasonableness." (*Id.*). The Court notes that the methods of conducting a price reasonableness analysis are listed under FAR 15.404-(b). Specifically, FAR 15.404-(b)(2)(v) provides that a price analysis may properly be conducted by "[c]omparison of proposed prices with independent Government cost estimates[,]" which, by Orion's own admission, is what occurred in this case. (*See* Pl.'s Mot. at 19).

To refute Orion's argument, the United States provided excerpts of the Source Selection Decision Document ("SSDD") in which the USACE not only compared proposal prices to the IGE but also compared the offerors proposed prices to one another. (*See* Def.'s Resp. App. at 74). The SSDD details USACE's analysis, stating:

> Each proposal was compared to the [IGE] and shows the percentage variance of each and whether the proposal was within the awardable range according to the guidelines of the US Army Corps of Engineers Acquisition Instruction (UAI) section 5136.205-100. The table also compares each proposal with the other, which establishes fair, and reasonableness based on competition.

| Table 4 -Original Price Proposal totals with Variances | | | |
|---|---|---|---|
| Offerors | Original Price Proposal | % Variance with IGE | Awardable Range |
| IGE | | | |
| McCarthy Building Companies Inc | | 25.88% | Over 25% |
| Orion Government Services LLC | | 2.34% | Awardable Range |

(*Id.*). This method is consistent with the FAR. Additionally, the United States provided excerpts from the SSDD explaining USACE's rationale for selecting McCarthy as the higher priced offeror over Orion's lower price:

> Orion submitted a final price proposal free of mathematical error in the amount of $149,996,515.00 which is ▮ higher than the IGE and is within awardable range. McCarthy submitted a final price proposal free of mathematical error in the amount of $181,551,864.00 which is ▮ higher than the IGE and within awardable range . . . . As such, it must be determined if it is in the Government's best interest to pay the 21% higher premium price to obtain the proposed benefits . . . . I have determined that the overall technical advantages proposed are worth the trade off and in the Government's best interest to select McCarthy Building Companies Inc's proposal which is considered the best value.[1]

(*Id.* at 90–91). The evidence presented demonstrates deeper analysis than the "rote calculation" Orion suggests occurred. The Court is not persuaded that USACE's price analysis was improper.

Orion also argues that "[USACE] gave no consideration to whether the variation [among priced contract line items] resulted in unbalanced pricing" in violation of FAR 15.404-1(g)(2). (Pl.'s Mot. at 18). Orion further asserts that "if [USACE] had conducted such a comparison, it is likely the Agency would have identified McCarthy's and ▮ proposed pricing as materially unbalanced." (*Id.* at 22). To support its argument, Orion points to a table depicting McCarthy's pricing exceeding that of the IGE:

| CLIN | IGE | McCarthy |
|---|---|---|
| 0001 - Mobilization and Demobilization - BBC | ▮ | ▮ |
| 0014 - Mob/Demob - M12 Berm and Placement | ▮ | ▮ |
| 0030 - Mob/Demob - Cedar Bayou Pipeline Dredg | ▮ | ▮ |
| 0031 - Dredge Pipeline Setup & Mgmt - M12/AC | ▮ | ▮ |
| 0033 - Spilman Island CBW: Mob/Demb | ▮ | ▮ |
| 0066 - Morgan's Point Landside Demo: Mob/Demob | ▮ | ▮ |
| 0069 - Morgan's Point Bulkhead Wall: Mob/Demob | ▮ | ▮ |
| 0087 - LASH Dock Demo: Mob/Demob | ▮ | ▮ |
| Total | ▮ | ▮ |

(*Id.*). Orion acknowledges that USACE "recognized that it [would be] paying a higher overall price for McCarthy's proposal[.]" (*Id.* at 22). However, Orion argues that McCarthy's proposed prices are "comparably much lower for the line items with variable 'unit' rates" in contrast to the line items above, thus the prices remain unbalanced. (*Id.* at 22). Orion alleges McCarthy underbid line items that are less likely to be performed and overbid items that are more likely to be performed "which is the hallmark characteristic of unbalanced pricing and its risk to the

---

[1] The Source Selection Decision Document ("SSDD") lists a plethora of benefits that the Court declines to recite in this Opinion. (Def.'s Resp. App. at 90–91, ECF No. 23-1).

government." (*Id.* at 24–25). Ultimately, Orion argues that it was prejudiced by USACE's failure to evaluate proposals for unbalanced pricing and asserts that had it done so, USACE "would have determined the proposed prices [of all other offerors] to be unbalanced." (*Id.*).

Orion has not presented evidence supporting its argument or showing that USACE failed to evaluate proposals for unbalanced pricing. In fact, the United States cites evidence from the record that would suggest the opposite. The United States points out that the Source Selection Evaluation Board ("SSEB") stated that the "cost/price team also evaluated for the appearance of unbalanced pricing in accordance with FAR 15.404-1(g)" and also affirmed that "[p]rices were reviewed for variation from the IGE, errors, and/or omissions." (Def.'s Resp. App. at 49). While the SSEB's report may not detail USACE's analysis, the evidence demonstrates that an evaluation of unbalanced pricing was conducted on some level acceptable by the USACE. Therefore, it is reasonable to determine that USACE conducted an evaluation for unbalanced pricing in McCarthy's favor. The likelihood of Orion's success on this element of their claim is not discernible.

Finally, Orion argues that "[USACE] ignored known information about McCarthy's dredging subcontractor having scheduling issues and the subcontractor's approach to addressing those scheduling issues." (Pl.'s Mot. at 18–19). Orion bases these arguments on several allegations, including that McCarthy did not address risk associated with its subcontractor's past performance and USACE ignored contradictory information regarding which dredge McCarthy's subcontractor would utilize. (*Id.* at 25–27). As with its earlier assertions, Orion fails to supply the Court with sufficient evidence regarding any of these claims or identify any Solicitation requirement mandating USACE to consider, in depth, every possible risk posed by an offeror's proposal. *See Info. Tech. &Apps. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) ("[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law"). Therefore, this claim also fails.

### B. Irreparable Harm

As to irreparable harm, Orion argues that it "has been deprived of a fair opportunity to compete by virtue of the USACE's unlawful contract award." (Pl.'s Mot. at 28). Orion alleges that if McCarthy is permitted to begin performance, the Agency will "commit[] significant contract funds to McCarthy [making] it even more difficult . . . for this [C]ourt to fashion a meaningful remedy." (*Id.*). Orion also asserts that "there is no meaningful way to measure the value of the competitive and business interest that will be lost" absent an injunction. (*Id.*). Orion also fails to adequately support this claim.

When evaluating whether a protestor will suffer irreparable harm, the Court must determine "whether [the] plaintiff has an adequate remedy in the absence of an injunction." *Hanford Tank Disposition Alliance, LLC v. United States*, 173 Fed. Cl. 269, 340 (2024) (quoting *Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 582 (2013). Additionally, the protestor must demonstrate a financial injury that is "both certain and great" and will have "an immediate and substantial impact." *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 39, 48 (2022) (citing *Wis. Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) and *Sys. Appl'n & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012)). The Court will "consider

5

economic loss as evidence of irreparable harm if it 'threatens the survival of a movant's business'" but "the movant must provide facts or evidence to support its assertions of harm and cannot rely only 'on attorney arguments to establish irreparable injury.'" *Newimar, S.A. v. United States*, 163 Fed. Cl. 240, 254 (2022) (internal citations omitted). Like many of its other arguments, Orion makes assertions without any supporting evidence. Orion's broad statements do not provide the Court with a methodology to assess the financial harm Orion would endure in the absence of an injunction. The Court finds this problematic.

In contrast, the United States' Response opposing the Motion for Injunctive Relief includes a declaration from USACE's Chief of Project Management. (Def.'s Resp. Decl., ECF No. 23-2). This declaration emphasized several potential risks associated with granting this preliminary injunction. (*See generally id.*). The declaration states that pausing performance on this contract restricts vessel movement, delays the Port of Houston's $650 million dollar investment to "expand and modernize the Barbours Cut terminal complex[,]" and "poses a significant safety concern to commercial vessel traffic." (*Id.* at 3–4). Even further, the declaration asserts that pausing performance would require USACE to "procure a critical maintenance dredging requirement through a separate contract acquisition" and "increase the maintenance dredging costs from approximately $6.14 million, under the subject contract, to an estimated $15.58 million under the new procurement; or a $9.44 million impact to the Federal government." (*Id.*). This evidence is compelling and weighs in favor of the United States.

Orion has failed to provide any meaningful evidence to support its contentions and thus, Orion has not met its burden of showing irreparable harm in the absence of injunctive relief. *Amazon.com, Inc. v. United States*, 239 F.3d 1343, 1350 (2001) (finding that a plaintiff may not be granted preliminary relief "unless it establishes both of the first two factors . . . likelihood of success on the merits and irreparable harm."); *Altana Pharma AG*, 566 F.3d at 1005 ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction.").

### III.   Conclusion

For the stated reason, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction, (ECF No. 5). The Court **ORDERS** the parties to meet and confer and file a Joint Status Report proposing redactions to this Order by **February 19, 2025**.

      Additionally, during the Courts initial Scheduling Conference held on January 22, 2025, the Court ordered the parties to confer and propose a schedule in this proceeding. The parties were unable to reach an agreement. The Court hereby adopts the following briefing schedule for the parties' cross-motions for judgment on the administrative record and oral argument, if necessary:

| Event | Deadline |
|---|---|
| Administrative Record filed in CM/ECF | February 12, 2025 |
| Plaintiff's Motion for Judgment on the Administrative Record | February 26, 2025 |
| Defendant and Intervenor-Defendant's Response Briefs/Cross-Motions | March 12, 2025 |
| Plaintiff's Reply/Response Brief | March 20, 2025 |
| Defendant and Intervenor-Defendant's Reply Briefs | March 28, 2025 |
| Oral argument, if any | TBD |

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge